People v Crawford (2025 NY Slip Op 01131)

People v Crawford

2025 NY Slip Op 01131

Decided on February 27, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 27, 2025

113298
[*1]The People of the State of New York, Respondent,
v
Timothy Crawford, Appellant.

Calendar Date:January 8, 2025

Before:Clark, J.P., Aarons, Reynolds Fitzgerald, Fisher and McShan, JJ.

Hug Law PLLC, Albany (Matthew C. Hug of counsel), for appellant.
Lee C. Kindlon, District Attorney, Albany (Daniel J. Young of counsel), for respondent.

McShan, J.
Appeal from a judgment of the Supreme Court (Roger McDonough, J.), rendered December 17, 2021 in Albany County, convicting defendant upon his plea of guilty of the crime of criminal possession of a controlled substance in the first degree.
In April 2019, state and federal law enforcement, including the Albany Police Department (hereinafter APD), began investigating a narcotics distribution ring that was being orchestrated by members of the Yard Boys gang. The investigation focused on the alleged leader of the Yard Boys and revealed, among other things, that said individual was purchasing cocaine from an unidentified source in the City of Albany who utilized two telephone numbers to facilitate those transactions. In connection with their investigation, the People applied for, among other things, an eavesdropping warrant that would permit surveillance of those phone numbers in order to gain more information regarding the criminal enterprise that involved the unidentified source and the Yard Boys. Utilizing information garnered through the eavesdropping warrant, law enforcement identified defendant as the source. APD then successfully applied for a search warrant authorizing the search of defendant's residence located in the City of Albany. After observing what appeared to be a drug sale at the residence, APD effectuated the warrant and searched the residence, culminating in defendant's arrest.
Defendant was thereafter charged by indictment, along with 15 other individuals, with one count of conspiracy in the second degree. The indictment further charged defendant individually with six counts of criminal sale of a controlled substance in the first degree, criminal possession of a controlled substance in the first degree, criminal possession of a controlled substance in the third degree, two counts of operating as a major trafficker, criminally using drug paraphernalia and criminal possession of marihuana in the second degree. In his omnibus motion, defendant moved, among other things, to suppress all physical evidence garnered from the search of his residence. As relevant here, defendant argued that the eavesdropping warrant was improperly issued because law enforcement did not make the required showing that normal investigative procedures would not have been successful. Defendant also argued that the ensuing search of his residence was illegal because, among other things, the police officers who effectuated the warrant did not have a physical copy present at the search and did not show it to defendant upon his request. As to the eavesdropping warrant, Supreme Court denied that part of defendant's motion without a hearing. The court thereafter conducted a hearing on defendant's remaining suppression arguments, after which the court denied that part of defendant's motion seeking to suppress the evidence recovered from the search of his residence.
Defendant ultimately pleaded guilty, pursuant to a plea agreement with the People and in satisfaction of [*2]the indictment, to one count of criminal possession of a controlled substance in the first degree. The plea agreement contemplated a sentence of a prison term between 12 and 16 years, to be followed by five years of postrelease supervision, and required that defendant waive his right to appeal. Defendant was thereafter sentenced, as a second felony offender, to a prison term of 15 years, to be followed by five years of postrelease supervision. Defendant appeals.
We affirm. At the outset, we agree with defendant's contention that his waiver of the right to appeal is invalid. We have previously determined that the written waiver utilized in this case is overbroad (see e.g. People v Ellis, 229 AD3d 1006, 1006-1007 [3d Dept 2024]; People v Lomack, 219 AD3d 1646, 1647 [3d Dept 2023], lv denied 40 NY3d 1040 [2023]). Further, the defect in the written waiver was not overcome by Supreme Court's oral colloquy. Although Supreme Court initially indicated that there are "certain things that can never be waived, such as jurisdiction and others," the court's subsequent statement that defendant's waiver encompassed appeals from issues, "both 
constitutional[ ] and otherwise," including his plea, conviction and sentence, created confusion relative to the survival of certain appellate rights and otherwise suggested that the waiver signaled the finality of defendant's case (see People v Thomas, 34 NY3d 545, 566 [2019]; People v Ellis, 229 AD3d at 1006; People v Devane, 212 AD3d 894, 895 [3d Dept 2023], lv denied 39 NY3d 1110 [2023]; People v Destouche, 154 AD3d 1003, 1004 [3d Dept 2017]). Given defendant's invalid appeal waiver, we may address defendant's challenges to Supreme Court's suppression rulings and the severity of his sentence (see People v Weber, 226 AD3d 1158, 1159 [3d Dept 2024], lv denied 42 NY3d 931 [2024]).
We turn first to defendant's contention that Supreme Court erroneously denied his motion to suppress evidence obtained from the December 2019 eavesdropping warrant. Specifically, defendant argues that there was an insufficient showing that normal investigative procedures were unavailable. We disagree. Although "an eavesdropping warrant may issue only 'upon a showing that normal investigative procedures have been tried and have failed, or reasonably appear to be unlikely to succeed if tried, or to be too dangerous to employ' " (People v Rabb, 16 NY3d 145, 150 [2011] [brackets omitted], cert denied 565 US 963 [2011], quoting CPL 700.15 [4]), that does not require a demonstration that every conceivable means of investigation has been exhausted prior to seeking authorization for electronic surveillance (see id. at 153; People v Anderson, 149 AD3d 1407, 1409 [3d Dept 2017], lv denied 30 NY3d 947 [2017]). "Rather, the requirements are satisfied by establishing the nature and progress of the investigation and the difficulties inherent in the use of normal law enforcement methods" (People v Brown, 233 AD2d 764, 765 [3d Dept 1996], lv denied 89 NY2d 1009[*3][1997] [internal quotation marks, ellipsis and citations omitted]).
To begin, the detective's affidavit in support of the request for the eavesdropping warrant provided a detailed history of the wide-ranging investigation into gang-related violence and the criminal drug distribution network involving the Yard Boys and their purported leader. In connection with that investigation, the detective noted that they had yet to confirm defendant's identity as the source of cocaine for the Yard Boys, although they had determined that defendant was the subscriber of the two telephone numbers that were in contact with the Yard Boys' leader. The detective noted that the scope and objectives of the sought-after eavesdropping warrant, which included, among other things, identifying the various suppliers of narcotics being sold to the Yard Boys and the methods by which those narcotics were procured, would be unlikely to be fully accomplished by continuing the use of the various investigatory tactics already incorporated into the overall investigation. Specifically, based upon his knowledge of the Yard Boys criminal enterprise and the individuals involved therein, the use of informants or undercover agents would be unsuccessful in furthering the investigation, as the Yard Boys were suspicious of police surveillance and would be reticent to introduce any of their customers to the source of their narcotics for fear of undermining their own profits (see People v Rabb, 16 NY3d at 154). For similar reasons, the detective noted that warrants, subpoenas or grand juries would be ineffective in garnering relevant information as to the participants as well as the quantities of drugs being distributed. Altogether, we find that the detective's affidavit provided the appropriate justification for the use of the eavesdropping warrant and established that its use was not merely being resorted to as a tool of convenience (see People v Harris, 195 AD3d 1537, 1538 [4th Dept 2021], lv denied 37 NY3d 1027 [2021]; People v Giddens, 161 AD3d 1191, 1194 [2d Dept 2018], lv denied 32 NY3d 937 [2018]; People v Murray, 155 AD3d 1106, 1107-1108 [3d Dept 2017], lv denied 31 NY3d 1015 [2018]; People v Anderson, 149 AD3d at 1409). Accordingly, defendant's motion to suppress stemming from the issuance of the eavesdropping warrant was properly denied.
With respect to the search of his residence, defendant argues that the no-knock warrant authorizing the search was effectuated improperly, rendering it tantamount to a warrantless search. Specifically, defendant argues that the People failed to establish that law enforcement was in physical possession of the warrant at the time of the search or that the officers effectuating the search were aware of its contents. We find no merit to his contentions. Supreme Court explicitly credited the account of the detectives provided at the pretrial hearing, including the testimony of the detective directly involved in preparing the search warrants, who indicated [*4]that physical copies of the relevant warrants were distributed to the various teams effectuating the searches prior to said searches, and that a copy of the warrant authorizing the search of defendant's residence would have been physically present at the time of the search (see People v Oliver, 172 AD3d 1457, 1460 [3d Dept 2019], lv denied 34 NY3d 1080 [2019]). In any event, although that detective did not identify a specific officer who was in possession of the warrant at the time it was effectuated, the physical presence of the warrant was not necessary under the circumstances (see People v Mahoney, 58 NY2d 475, 479 [1983])[FN1] so long as the effectuating officers were aware that the warrant was properly issued and they were familiar with its content (see People v Williams, 275 AD2d 753, 754 [2d Dept 2000], lv denied 96 NY2d 764 [2001]). To that end, a different detective who was present at the residence on the day of the search testified that he was familiar with the contents of the warrant and, consistent with that premise, that the executing teams had planned the search pursuant to the terms of the warrant days prior to the actual search, which is further reflected by the fact that the search occurred three days after the warrant was approved. Accordingly, we find that the search was properly effectuated and Supreme Court did not err in denying defendant's motion (see People v Mahoney, 58 NY2d at 479; People v Williams, 275 AD2d at 754).
Finally, we reject defendant's request that we modify his sentence in the interest of justice (see CPL 470.15 [3] [c]). Defendant has a lengthy criminal history of drug-related offenses dating back to 1996 and received a sentence well below his potential exposure (see People v Williams, 232 AD3d 1124, 1126 [3d Dept 2024]; People v White, 231 AD3d 1429, 1433 [3d Dept 2024], lv denied ___ NY3d ___ [Jan. 22, 2025]). Accordingly, we do not find the sentence "unduly harsh or severe" under the circumstances (CPL 470.15 [6] [b]).
Clark, J.P., Aarons, Reynolds Fitzgerald and Fisher, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: We find no merit to defendant's contention that the effectuating officers did not provide him with a copy of the warrant upon request, as the no-knock warrant at issue did not require notification prior to its effectuation (see CPL 690.50 [2] [b]) and, more importantly, there is no credible evidence in the record that defendant made such a request until after he was transported to the Albany police station (see CPL 690.50 [1]; see also People v Cotroneo, 199 AD2d 670, 670-671 [3d Dept 1993], lv denied 83 NY2d 851 [1994]).